FILED'10 DEC 29 10:30USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOYCE WINN

                Plaintiff,                           CV-09-6345-AA

     v.                                   OPINION AND ORDER

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.

AIKEN, Judge:

      Plaintiff Joyce Winn brings this action for judicial review of a final decision of the
Commissioner of Social Security denying her application for disability insurance benefits (DIB) and
supplemental security income (SSI) payments under Titles II and XVI of the Social Security Act.
The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's decision
is affirmed.

## BACKGROUND

Winn was fifty-three years old at the time of the administrative hearing. Admin. R. 22. She has an eighth grade education. *Id.* Winn has worked as a sterile processor and hospital housekeeper. *Id.* at 40-41, 145-147. She alleges disability due to diabetes, fibromyalgia, hypertension, depression, anxiety, memory and attention deficiency. A previous filing for social security benefits resulted in an adjudication that she was not disabled through August 19, 2004. Winn filed for SSI on November 28, 2005 and for DIB on December 6, 2005, alleging disability since August 20, 2004. Her applications were denied initially and on reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on September 29, 2008. The ALJ found Winn satisfied the insured status requirements for a claim under Title II through December 31, 2006. Winn must establish that she was disabled on or before that date to prevail on her DIB claim. 42 U.S.C. § 423(a)(1)(A), *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). The ALJ issued an opinion on November 4, 2008, finding Winn not disabled, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987), 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines

whether the claimant has engaged in any substantial gainful activity (SGA) since the alleged onset

of disability.   20 C.F.R.   §§ 404.1520(b), 416.920(b).   If the claimant has engaged in SGA, he is not

disabled.  *Id.*  The Commissioner determines at step two whether the claimant has a severe impairment.  An

impairment is severe if it significantly limits the claimant's ability to perform basic work activities.

20 C.F.R. §§404.1521, 416.921.  The burden to show a medically determinable severe impairment

is on the claimant.  *Bowen v. Yuckert*, 482 U.S. at 146.

At step three, there is a conclusive presumption that the claimant is disabled if the

Commissioner determines that the claimant's impairments meet or equal "one of a number of listed

impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful

activity." *Id.* at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  The criteria for these listed impairments

are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1. (Listing of Impairments).

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's

residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained work-

related activities the claimant can still do on a regular and continuing basis, despite the limitations

imposed by his impairments. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p.

At step four, the Commissioner must determine whether the claimant retains the RFC to perform

work he has done in the past.  If the ALJ determines that he retains the ability to perform his past

work, the Commissioner will find the claimant not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant cannot perform his past relevant work, the analysis proceeds to step five.  At

step five, the Commissioner must determine whether the claimant can perform work that exists in the

national economy. *Bowen v. Yuckert*, 482 U.S. at 142; 20 C.F.R. §§ 404.1520(g), 416.920(g).  Here

the burden shifts to the Commissioner to show that a significant number of jobs exist in the national

economy that the claimant can do.  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  If the

Commissioner meets this burden, then the claimant is not disabled.  *Id.,* 20 C.F.R.  §§ 404.1566,

416.966.

## ALJ'S FINDINGS

The ALJ applied the five step disability determination analysis and found at step one that

Winn had not engaged in any SGA since August 20, 2004, the alleged onset date of her disability.

Admin. R. 11.  At step two, he determined that Winn has the medically severe impairments of

arthritis, degenerative disc disease of the cervical spine, and diabetes mellitus.  *Id.*  The ALJ found

at step three that Winn does not have an impairment or combination of impairments that meet or

medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app.1.  *Id.*

The ALJ found Winn has the RFC to:

> lift and carry 20 pounds occasionally and 10 pounds frequently, and is able to push
> and/or pull within the same weight limitations.  She is able to sit for six hours per
> eight-hour work day, and stand/or walk for six ours per eight-hour work day, with
> the option to sit or stand.  Lastly, the claimant is limited to occasional overhead
> work and is restricted from climbing ladders, scaffolds, or ropes.

*Id.*  at 12.

The ALJ elicited the testimony of a vocational expert (VE).  At step four, the ALJ found,

based on the testimony of the VE, that Winn could perform her past relevant work as a sterile

processor as the job is generally performed.  *Id.*  at 14.  The ALJ proceeded to step five.  The VE

testified there were other jobs in the national economy an individual with Winn's age, education,

past relevant work, and RFC could perform.  *Id.*  at 15, 48-49.  Based on the VE's testimony the

ALJ found there were jobs that exist in significant numbers in the national economy that Winn

could perform and was therefore not disabled.  *Id.*  at 14-15.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for "determining credibility, resolving conflicts in the medical testimony and resolving ambiguities." *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d at 1193.

## DISCUSSION

Winn alleges the ALJ erred in determining her RFC by failing to take into consideration the severity of her arm impairments and failing to develop the record regarding that limitation. She also alleges that res judicata requires the ALJ to make a RFC determination identical to that of a previous ALJ during a prior adjudication. Winn challenges the ALJ's assessment of the medical evidence and her credibility. She asserts the Appeals Council failed to make proper findings regarding her heart condition. Winn also asserts the ALJ erred at steps four and five by not including all of her limitations in the hypothetical questions given the VE.

I.      **Medical Background**

Winn's medical record from the date of alleged onset indicate that she was seen by Dr.

Cross in September 2004 for blood tests and medications.  Admin. R. 221.  He diagnosed general

anxiety disorder, unspecified acquired hypothyroidism and benign hypertension.  Dr. Cross

examined Winn in February 2005 and noted she had upper back pain, a family history of

osteoporosis, and had been on thyroid supplementation for a long time.  *Id.* at 220.  He noted

Winn's diabetes was diet controlled, her blood pressure was controlled, and she likely had

osteoporosis.

Dr. Depper, a rheumatologist, performed an annual exam on March 8, 2005.  *Id.* at 207-

208.  He noted Winn lived with her sister and brother-in-law; took care of their home; and did

bookkeeping for her brother-in law.  Dr. Depper had Winn complete a Work Capacities Form.

He noted she could stand for an hour, sit for six hours, and drive and walk for two hours out of an

eight hour day.  Dr. Depper further noted she was capable of doing some sedentary work with

occasional lifting of up to ten pounds.  He noted Winn continued to have trigger point tenderness

and he also suggested she take less of her Soma medication.

Dr. Cross examined Winn on April 7, 2005 and noted she had back pain and a dexa scan

showed osteoporosis and ordered further tests.  *Id.* at 219.  On April 23, 2005 Dr. Cross noted

Winn was osteopenic and recommended calcium, vitamin D, weight bearing exercises, fall

prevention, and starting the medication Fosomax.  *Id.* at 218.  He referred her to a consultant

regarding some problem she had swallowing.  On May 19, 2005 Winn underwent an outpatient

endoscopy which showed a hiatal hernia and esophagitis associated with alcohol, non-steroid anti-

inflammatory drugs and bile reflux.  *Id.* at 270-277.

Winn saw Dr. Cross on November 15, 2005 for panic attacks and an inability to sleep. *Id.* at 216-217. He noted she was taking Tamazepam at night and Paxil during the day, but admitted to consuming alcohol with a past history of problems. Dr. Cross asked her to stop drinking alcohol. He noted she generally felt well with no aching joints, no weakness, or numbness. Dr. Cross further noted Winn smoked a pack of cigarettes a day; smelled of alcohol; and did not appear anxious. His exam notes indicate Winn had normal strength, cranial nerve function, gait, and sensation. He recommended a change in medications.

Winn returned to Dr. Cross on November 22, 2005 and he noted she was feeling better and was taking her medications. *Id.* at 215. He noted she was able to squat and return to a stand; bend over and touch her toes; stand on either foot; raise her arms over her head; and had normal tendon reflexes, strength, and sensation. Dr. Cross noted she had chronic fibromyalgia, hypertension, hypothyroidism, depression, and symptoms of glucose intolerance. He diagnosed diabetes without complication, cervical spondylosis without myelopathy, unspecified hypothyroidism, and hypertension.

Dr. Cross examined Winn on December 20, 2005 and noted her diabetes was managed well and her hypertension and depression were controlled with medication. *Id.* at 213. He noted she had arthritis in her right thumb; complained of numbness and tingling in her feet; and had back and joint pain. Dr. Cross noted she had a normal exam with a supple neck, normal range of motion in the hips and knees, and a diminished ankle reflex on the left. He diagnosed diabetes mellitus without complication, tobacco use, benign essential hypertension, hypothyroidism, and insomnia.

On March 21, 2006 Dr. Cross examined Winn and encouraged her to start exercising regularly. *Id.* at 337. He noted her rheumatologist had retired and she needed a referral. Dr. Cross diagnosed diabetes mellitus without complication, unspecified acquired hypothyroidism, benign hypertension, and unspecified myalgia and myositis. Dr. McElroy examined Winn on September 9, 2006 because of low blood pressure and a tendency toward falling. *Id.* at 334-335. He found no muscle tenderness, weakness, or evidence of neuropathy and had her cease her diuretic medication. Dr. Cross examined Winn on September 12, 2006 and noted she had low potassium but felt better after stopping the diuretic medicine. *Id.* at 332-333. He also noted that Dr. McElroy had found a macrocytosis, and Winn admitted to drinking at night and a family history of vitamin B12 deficiency. Dr. Cross ordered new medications, potassium, and a check of Winn's vitamin B12 levels.

Winn was admitted to St. Charles Medical Center on December 10, 2006 after having a seizure. *Id.* at 295-297. She admitted to taking too many medications, running out of the medications, and then not taking any medications. The seizure was thought to be caused by the quick withdrawal from the medications. Her CT scan of the head was normal; a pulmonary angiogram was normal; and she had a normal exam with normal strength in her extremities. A left hip x-ray was taken and it was normal. *Id.* at 308. Dr. Cross examined Winn on January 15, 2007 and noted her diabetes, hypertension, depression, osteoporosis, and generalized convulsive disorder were all stable. *Id.* at 327-328. He noted she was managing fairly well, had no foot problems, no further convulsive episodes, no chest pains or shortness of breath.

Dr. Cross examined Winn on April 3, 2007 and noted that she continued to smoke and to have back, neck and joint pain. *Id.* at 325-326. He also noted her depression was better, her

blood pressure controlled, her thyroid was stable, and she had normal strength, sensation, coordination, and mental status. Dr. Winn found her chronic problems were improving. He examined her again on January 31, 2008 due to a mix-up with her medications and noted she felt well although her living situation was not good. *Id.* at 320-321. Dr. Winn noted she had no foot numbness, no major muscle or joint problems, looked well, and was in no distress. He further noted she had normal range of motion in her neck and extremities, normal strength, normal affect, and was not depressed or anxious. Dr. Cross noted Winn had no memory deficits, and that her diabetes and chronic pain were under control.

Winn suffered a myocardial infarction in November 2008. She was treated with cardiac catheterization and stents and sent home walking after four days in the hospital. *Id.* at 364-368, 371-377. Dr. Adair, a cardiologist, examined Winn on December 9, 2008 and noted that she was clinically stable with no congestive heart failure symptoms, not chest pain or shortness of breath. *Id.* at 369-370. He recommended she remain on medication for at least a year.

## II.    RFC

Winn asserts the ALJ erred in determining her RFC by failing to properly assess the medical evidence and by failing to properly apply the principles of res judicata. She also contends the ALJ erred in discounting her credibility.

### A. Res Judicata

Winn asserts that principles of res judicata require the ALJ to make identical RFC findings to those made by a previous ALJ in a time period prior to the alleged date of onset in this claim. The Commissioner argues that the SSA considers the issue of disability for a new time period de novo, citing Acquiescence Ruling 00-1(4), *available at* 2000-WL 43774. A rigid application of

res judicata is not applied in administrative proceedings. *Lester v. Chater,* 81 F.3d 821, 827 (9th Cir. 1995).

The presumption that a claimant is able to work following a finding of non-disability does not apply when there are "changed circumstances" or when the claimant raises a new issue. *Id.* As the ALJ noted, changed circumstances exist in this case because Winn's age category has changed. Admin. R. 9. Winn's argument is that notwithstanding the previous finding of non-disability, the ALJ erred by not finding the same RFC as the previous ALJ. "The first administrative law judge's findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings." *Chavez v. Bowen,* 844 F.2d 691, 694 (9th Cir. 1988).

The first ALJ's determination of Winn's RFC was "wide range of light work, only occasional overhead reaching, no ropes, ladders or scaffolding and a sit stand option required. She cannot perform constant work with the arms extended and unsupported." (Pl.'s Br., attachment, pg. 7). The current RFC is for light work, with sitting, standing, and walking limited to six hours in an eight hour day, with the option to sit or stand. She is limited to occasional overhead work and is restricted from climbing ladders, scaffolds, or ropes. Admin. R. 12. The previous RFC found Winn unable to perform constant[1] work with the arms extended and unsupported. Notwithstanding the constant work limitation, that ALJ found Winn capable of performing her past relevant work.

---

[1]The Dictionary of Occupational Titles defines constant work as more than two-thirds of the work day. Frequent work is from one-third to two-thirds of the work day. Occasional work is up to one-third of the work day. Dictionary of Occupational Titles, (4th ed., 1991) available at www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

The ALJ in this case determined there were inconsistencies between Winn's allegations and the medical record. When questioned at the hearing about whether she would have trouble using her arms in front of her if she held them close to her body, Winn testified, "If I had them close to my body, but then I can't see what I'm doing because then I'm looking down and that's the same thing with the neck, if I have it in an awkward position too long it gets stiff...I can't do something and look down." *Id.* at 34. The ALJ noted the medical record indicated Winn's strength, sensation, and coordination were normal and that her pain symptoms were stable. *Id.* at 13. He further cited Dr. Cross' notes that Winn's neck was supple without adenopathy, and with normal range of motion. *Id.*

The ALJ adopted most of the previous RFC. Both ALJ's found Winn could perform her past relevant work. Regardless of whether the ALJ should have included the limitation of no "constant work with the arms extended and unsupported" in the RFC, it did not affect the ALJ's determination that Winn was not disabled, and is not reversible error. *Stout v. Commissioner, Social Sec. Admin.,* 454 F. 3d 1050, 1055 (9th Cir. 2006). The ALJ found at step five that Winn could perform the job of home companion, and there are a significant number of these jobs in the national economy. When questioned by Winn's attorney, the VE testified that even if limited to only occasionally being able to have her hands in front of her, she could still perform the job as home companion. *Id.* at 50.

Winn also asserts the ALJ should have found her fibromyalgia a severe impairment because the previous ALJ did so. The ALJ determined Winn had severe impairments at step two and properly proceeded with the disability evaluation. The issue is whether there are functional limitations from the fibromyalgia that should be included in the RFC. *Burch v. Barnhart,* 400 F.

3d 676, 682 (9th Cir. 2005). The previous ALJ noted that despite Winn's assertion that she had fibromyalgia for fifteen years, she worked for over fourteen of those years, at times working two jobs. (Pl.'s Br., attachment pg. 4). The ALJ properly considered the medical evidence, as noted below, and limited Winn's RFC to light work with limitations. The ALJ gave the necessary res judicata consideration to the previous RFC in this case.

### A. Medical Evidence

The ALJ rejected the opinion of Dr. Depper, Winn's rheumatologist, regarding her limitations. *Id.* at 13. Dr. Depper opined, after Winn completed a work form, that she was limited to sedentary work. *Id.* at 207-208. The ALJ noted that Winn's presentation to Dr. Depper was that she was very limited in her activities, while her presentations to her family doctor demonstrated few objective findings. The ALJ properly found Winn not fully credible, *see infra* at 14-16, and discounted Dr. Depper's opinion in part because it was based on Winn's own report of abilities rather than objective findings. He also found Dr. Depper's opinion not consistent with the findings of Dr. Cross, and the record as a whole.

The ALJ may reject physician opinions, whether or not controverted, when they are brief, conclusory, and not supported by the record as a whole or clinical findings. *Thomas v. Barnhart,* 278 F.3d 947, 957, (9th Cir. 2002), *Batson v. Commissioner of Social Sec. Admin.*, 359 F. 3d at 1195. An ALJ may also reject physician opinions that rely primarily on a claimant's subjective complaints which are properly discounted. *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989). The ALJ did not err in rejecting Dr. Depper's opinion regarding Winn's limitations.

Winn argues the ALJ failed to properly consider the state agency consultant's determination that Winn was limited to frequent grasping due to the arthritis in her right thumb.

Dr. Cross noted in December 2005 that Winn had arthritis in her right thumb. Admin. R. 213.

He did not mention any limitations due to this and in her last exam in 2008 noted no major muscle

or joint problems. *Id.* at 321. Dr. Habjan, a state agency consultant, examined the records in

January 2006, noted Dr. Cross' finding, and limited Winn to frequent handling due to the arthritis.

*Id.* at 258.

The ALJ noted his RFC was in general accordance with the state agency consultant and

found that despite Winn's arthritis, Dr. Cross' most recent exam indicated her symptoms were

stable, she retained normal strength and coordination, and there were no functional limitations

given. *Id.* at 13. Social security regulations specify that the most weight is given to the opinions

of treating physicians, followed by examining physicians, and the least amount of weight is given

to nonexamining experts such as Dr. Habjan. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th

Cir. 2001). The ALJ did not err in giving more weight to the latest opinion of Dr. Cross, an

examining physician.

Winn asserts the ALJ failed to fully develop the record regarding her arm and neck

limitations. An ALJ's duty to further develop the record is triggered when there is ambiguous

evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes

v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001); *Tonapetyan v. Halter,* 242 F.3d 1144, 1150

(9th Cir. 2001). The medical record is not inadequate. Winn objects to the way in which the ALJ

weighed the medical record. However, the ALJ findings were based on substantial evidence and

free from legal error. The court must uphold the ALJ's findings, even if evidence exists to

support more than one rational interpretation of the evidence. *Batson v. Commissioner of Social

Sec. Admin.,* 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d at 1039-1040.

**B. Testimony**

The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Winn has medically determinable impairments which could produce her symptoms. When there is an underlying impairment and no evidence of malingering, An ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of his symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When making a credibility evaluation, the ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen v. Chater*, 80 F.3d at 1284-1285, *Thomas v. Barnhart*, 278 F3d. at 958-959. The ALJ found the extent of the limitations claimed by Winn not to be consistent with the medical record or the record as a whole. The ALJ noted although Winn testified she could not look down and hold her head in one position for any length of time, Dr. Cross found Winn's neck had a normal range of motion and was supple. Admin. R. 13. The ALJ further noted that despite testimony regarding trouble using her hands, Dr. Cross found Winn's extremities normal with no limitations given. *Id.* Although recognizing that Winn has some neck pain and arthritis, the ALJ noted that her most recent exam demonstrated her symptoms were

stable and she retained normal strength, sensation, and coordination. *Id.* The ALJ noted the objective medical records showed impairments but not of a severity that would preclude all work.

The ALJ may also employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Smolen v. Chater,* 80 F.3d at 1284, SSR 96-7p. The ALJ noted Winn complained of "extreme memory problems" since her 2006 seizure, but the record showed no memory problems or further seizures. Admin. R. 13, 321. The ALJ also noted inconsistencies between Winn's presentations to Dr. Depper as extremely limited by her problems and her presentations to Dr. Cross, which were much less severe. *Id.* at 13. The ALJ also noted that despite Winn's testimony regarding the severity of her mental impairments, she was not referred to treatment and her family care practitioner most recently found her not depressed or anxious. *Id.* at 11, 13.

The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties in a position to have personal knowledge about the claimant's functional limitations. *Smolen v. Chater,* 80 F.3d at 1284, *Thomas v. Barnhart,* 278 F. 3d at 959. The ALJ found the level of daily activities reported by Winn was inconsistent with an inability to do any work. The ALJ noted she lived with her sister and brother-in-law, kept house for them, took care of pets, and did her brother-in-law's bookkeeping. Admin. R. 12, 13. The ALJ also noted that Winn made no attempt to find work after losing her last job in 2001. *Id.* at 13, 46.

The ALJ considered Winn's medical record, the inconsistency between her statements and the record, her activities of daily living, and her work record. The ALJ considered appropriate

factors and drew reasonable inferences from substantial evidence in the record in assessing Winn's credibility. The ALJ's determination of Winn's RFC is supported by substantial evidence in the record and free of legal error. The ALJ's RFC decision is therefore upheld. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d at 1039-1040.

## IV.    Steps Four and Five

Winn asserts the ALJ erred at steps four and five of the sequential process by failing to consider all of her limitations in his questions to the vocational expert (VE). At step four, the ALJ determines whether the claimant can perform her past relevant work either as she performed it or as performed in the national economy. The VE testified that Winn could not perform her past relevant work as a sterile processor as she performed it. Admin. R. 44-47. In her past work, Winn was often asked to move patients, which required a medium level of lifting. However, the VE testified that the job as generally performed did not include patient lifting. Based on this testimony, the ALJ found Winn could perform her past relevant work as performed in the national economy. *Id.* at 14.

At step five, the Commissioner must show that significant numbers of jobs exist which the claimant can perform. *Andrews v. Shalala,* 53 F.3d at 1043. An ALJ can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant supported by the record. *Id., Osenbrock v. Apfel,* 240 F.3d 1157, 1163-1164 (9th Cir. 2001). The VE testified that there were many home companion jobs in the national economy that were light level, and flexible. Admin. R. 48. The jobs require spending time with someone who is homebound and providing some light housekeeping or other attendant duties. The VE testified

that even if Winn were limited to only occasionally having her hands in front of her, she could perform the job. *Id.* at 50.

Winn contends the ALJ erred because he elicited testimony from the VE with hypothetical questions that did not contain all her limitations. As described above, the ALJ did not find the limitations credible. An ALJ is not required to incorporate limitations based on evidence that he properly discounted. *Osenbrock v. Apfel,* 240 F.3d at 1164-1165. The ALJ considered all the evidence and framed his vocational hypothetical questions based on the limitations supported by the record as a whole. The VE testified that Winn could perform a significant number of jobs that exist in the national economy. Admin. R. 35-40. The ALJ's conclusion that Winn is able to perform some work and is not disabled is supported by substantial evidence and free of legal error.

## V.    **Appeals Council Decision**

Winn suffered a myocardial infarction on November 11, 2008, after the decision of the ALJ. Winn asserts the Appeals Council failed to properly consider this information because it determined there was no basis for changing the ALJ's decision. *Id.* at 1-3. The medical record indicates Winn was treated with cardiac catheterization and stents and after four days released from the hospital able to walk. *Id.* at 372. Her follow up appointment indicated she was clinically stable, had no congestive heart failure symptoms, no chest pain, and no shortness of breath. *Id.* at 369-370. She was prescribed medication to be taken for at least a year.

Winn does not assert any specific limitations due to this condition that should have been incorporated into an RFC. There are no limitations in activity, including work, given in the

medical record.  Winn has not provided any evidence that she has any new limitations.  Therefore, the decision of the Commissioner is affirmed.

## CONCLUSION

Based on the foregoing, the ALJ's decision that Winn does not suffer from a disability within the meaning of the Social Security Act is based on correct legal standards and supported by substantial evidence.  The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

DATED this 22ND day of December, 2010.

_____

Ann Aiken

United States District Judge